UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

LILLIAN P.,[1]

        Plaintiff,

    v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

        Defendant.

Case No. 3:21-cv-00711-YY

OPINION AND ORDER

YOU, Magistrate Judge.

    Plaintiff Lillian P. seeks judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33, and Supplemental Security Income ("SSI") disability benefits under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f. This court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g). For the reasons set forth below, that decision is AFFIRMED.

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of her last name.

1 – OPINION AND ORDER

## PROCEDURAL HISTORY

Plaintiff protectively filed for DIB and SSI on October 12, 2018, alleging disability beginning on October 3, 2018. Her application was initially denied on March 8, 2019, and upon reconsideration on September 4, 2019. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place on October 22, 2020. After receiving testimony from plaintiff and a vocational expert, the ALJ issued a decision on November 19, 2020, finding plaintiff not disabled within the meaning of the Act. Tr. 13. The Appeals Council denied plaintiff's request for review on March 5, 2021. Tr. 1-5. Therefore, the ALJ's decision is the Commissioner's final decision and subject to review by this court. 20 C.F.R. § 416.1481.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

**SEQUENTIAL ANALYSIS AND ALJ FINDINGS**

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since her alleged onset date of October 3, 2018. Tr. 15. At step two, the ALJ determined plaintiff suffered from the following severe impairments: cardiomyopathy with a history of myocardial infarction and congestive heart failure (20 CFR 404.1520(c) and 416.920(c)). Tr. 15. The ALJ recognized other impairments in the record, but concluded those conditions to be non-severe. Tr. 16.

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 17. The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined she could perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) except with the following limitations: frequent stooping, crouching, crawling, and kneeling, and no more than occasional climbing.

At step four, the ALJ found plaintiff was able to perform past relevant work as a buffet waitress and slot machine attendant, which did not require the performance of work-related activities precluded by plaintiff's RFC. Tr. 20. Therefore, the ALJ did not reach step five, and

found plaintiff was not disabled from October 3, 2018, through the date of his decision, November 19, 2020.

## DISCUSSION

Plaintiff argues the ALJ erred by rejecting her subjective symptom testimony and the medical opinion of her treating physician, Dr. Eugene Spear.

### I.    Subjective Symptom Testimony

#### A.    Relevant Law

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted).  A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).  If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029.  SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an

individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

      **B.**      **Analysis**

Plaintiff argues the ALJ erred by rejecting her subjective pain testimony based on findings that she had "normal physical examinations and normal cardiac stress testing," Pl. Br. 12, and "improved symptoms with treatment," and was "generally stable and asymptomatic." *Id.* at 13.

In evaluating a claimant's subjective symptom testimony, an ALJ may consider whether it is consistent with objective medical evidence. 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3); SSR 16-3p, *available at* 2017 WL 5180304, at *7-8. A lack of objective medical evidence may not form the sole basis for discounting a claimant's testimony. *Tammy S. v. Comm'r Soc. Sec. Admin.*, No. 6:17-cv-01562-HZ, 2018 WL 5924505, at *4 (D. Or. Nov. 10, 2018) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[T]he Commissioner may not discredit [a] claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.")). However, when coupled with other permissible reasons, inconsistencies between a claimant's allegations and objective medical evidence may be used to discount a claimant's testimony. *Tatyana K. v. Berryhill*, No. 3:17-cv-01816-AC, 2019 WL 464965, at *4 (D. Or. Feb. 6, 2019) (citing *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197-98 (9th Cir. 2004)).

5 – OPINION AND ORDER

In assessing plaintiff's subjective symptom testimony, the ALJ cited to plaintiff's Function Report and hearing testimony. Tr. 18. The ALJ noted that plaintiff "alleged disability due to cardiac dysfunction," and "reported an episode of congestive heart failure on the alleged onset date as well as a history of lower extremity swelling, cramping, weakness, and edema." *Id*. The ALJ recognized that plaintiff claimed "persistent cardiac dysfunction as well as lower extremity symptoms despite treatment with prescription medication" and "difficulty with activities of daily living." *Id*. Plaintiff "also alleged deficits with exertional, postural, and manipulative activities as well as a need to elevate her legs up to three hours per day." *Id.*

Citing to the record, the ALJ observed that plaintiff's "medically determinable impairments could reasonable be expected to cause the alleged symptoms," Tr. 18:

- "During treatment, the claimant reported chest pain, shortness of breath, fatigue, dyspnea on exertion, palpitations, and upper and lower extremity numbness (1F/5; 8F/3, 4; 9F/3, 5, 20; 10F/6; 13F/2, 6, 10, 14; 15F/3; 17F/1; 19F/12)." Tr. 18.

- "The claimant's treatment included stent placement, catheterization, antiarrythmics, and prescription medication such as Effient, Imdur, Carvedilol, and Amiodarone (1F/6; 2F/1, 8, 9; 5F/13; 6F/4; 9F/1; 10F/7; 13F/5)." *Id.*

- "Treatment notes indicated the claimant received emergency care on the alleged onset date for congestive heart failure related to cardiomyopathy (1F/5; 9F/1)." *Id.*

- "Additional notes confirmed the claimant had a history of myocardial infarction (2F/1)." *Id.*

- "[P]hysical examinations found the claimant had wheezing, shortness of breath on exertion, systolic murmur, and bilateral lower extremity edema (2F/1; 9F/3, 5)." *Id.*

- "Further, echocardiogram testing noted the claimant had systolic and diastolic dysfunction, reduced ejection fraction, enlarged bilateral atrium, enlarged right ventricle, premature ventricular contraction, anterior wall perfusion defects, and findings consistent with myocardial infarction (2F/6, 7; 6F/3; 9F/6; 10F/8; 13F/12; 21F/2)." *Id.*

- "Angiography testing also found the claimant had left ventricular dilation and reduced ejection fraction (2F/8)." *Id.*

- "Medical imaging noted the claimant had chest fluid overload and findings consistent with cardiomegaly as well (9F/6)." *Id.*

However, the ALJ concluded that plaintiff's medical records showed her statements concerning the intensity, persistence, and limiting effects of her symptoms were not as severe as she claimed, Tr. 18:

- "[D]uring treatment, the claimant . . . reported no chest pain, no shortness of breath, no palpitations, no lower extremity edema, and improved symptoms and exertional capacity with medication compliance (2F/1; 6F/4; 13F/2, 6)." Tr. 18.

- "Further, treatment notes indicated the claimant was discharged following emergency care treatment with improved breathing (9F/1)." *Id.*

- "Additional treatment notes indicated the claimant had stable and asymptomatic cardiac findings (13F/5, 9, 17)." *Id.*

- "Moreover, physical examinations found the claimant had normal gait, full range of motion, normal strength, normal respiratory findings, regular heart rate and rhythm, regular heart sounds, and no edema (1F/7; 2F/4; 5F/8, 12; 6F/6; 8F/6; 9F/14, 20; 10F/8; 13F/12; 15F/6; 16F/29; 17F/4; 19F/15)." *Id.*

- "Echocardiogram testing also noted the claimant had normal left ventricular size, borderline left ventricular hypertrophy, low normal systolic function, normal to mildly reduced ejection fraction, normal sinus rhythm, and no significant valvular abnormalities (6F/3; 9F/16, 21; 21F/2)." *Id.*

- "In addition, angiographic evidence found the claimant had non-progressing coronary artery disease (2F/1)." *Id.*

- "Cardiac stress testing also noted the claimant had normal findings, including normal heart rate and blood pressure with exercise, no chest pain or shortness of breath with exertion, and no changes consistent with ischemia (9F/30; 21F/1)." *Id.*

- "Additional medical imaging found the claimant had no active cardiopulmonary disease as well (9F/29)." *Id.*

The ALJs observations are amply supported by substantial evidence in the record, which the ALJ cited in detail.

As plaintiff correctly observes, her subjective symptom testimony cannot be rejected based solely on a lack of objective medical evidence. Here, the ALJ also discredited plaintiff's

7 – OPINION AND ORDER

testimony because medications effectively improved her symptoms. *See* Tr. 18-19 (observing that plaintiff was prescribed medications and she exhibited improved symptoms). "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

The ALJ's finding on this point is also supported by substantial evidence the record. Chart notes from November 2018 indicate that after taking carvedilol and amiodarone, plaintiff felt "better," had no palpitations, and her exertional symptoms were "much improved," and she "denie[d] chest pain, orthopnea, PND, and lower extremity edema." *See* Tr. 18 (citing 2F/1). In January 2019, plaintiff reported that she was "tolerating her cardiac medications well" and "doing fairly," and again "denie[d] chest pain, orthopnea, PND, and lower extremity edema." *See* Tr. 18 (citing 6F/4). As the ALJ further noted, "[a]dditional treatment notes indicated the claimant had stable and asymptomatic cardiac findings," while continuing to take her prescribed medications. Tr. 18 (citing 13F/5, 9, 17). In fact, plaintiff herself testified at the hearing that the medications were "effective for keeping my heart under control[.]" Tr. 35.

Finally, the ALJ rejected plaintiff's testimony based on her activities of daily living, specifically that she "reported being able to prepare meals, take care of pets, do laundry, and buy groceries as well." Tr. 18 (citing 6E/2-4). An ALJ may invoke activities of daily living in the context of discrediting subjective symptom testimony to (1) illustrate a contradiction in previous testimony or (2) demonstrate that the activities meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Here, the ALJ found the former, i.e., that plaintiff's allegations of disabling symptoms are not consistent with her daily activities. Tr. 19. It is unnecessary to reach this issue, however, because the ALJ provided at least one specific,

clear and convincing reason, supported by substantial evidence, to reject plaintiff's testimony. Therefore, the ALJ did not err in this regard.

## II. Medical Opinion Evidence

Plaintiff filed her application for benefits on October 12, 2018. For claims filed on or after March 27, 2017, Federal Regulation 20 C.F.R. § 404.1520c governs how an ALJ must evaluate medical opinion evidence under Title II, and 20 C.F.R. § 416.920c governs under Title XVI. *Revisions to Rules Regarding the Evaluation of Medical Evidence* (*Revisions to Rules*), 82 Fed. Reg. 5844, *available at* 2017 WL 168819 (Jan. 18, 2017).

Under these new regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). To that end, controlling weight is no longer given to any medical opinion. *Revisions to Rules*, 82 Fed. Reg. at 5867-68; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner evaluates the persuasiveness of medical opinions based on (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5), 416.920c(a), (c)(1)-(5). The factors of "supportability" and "consistency" are considered to be "the most important factors" in the evaluation process. 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

An ALJ must articulate how persuasive the ALJ finds the medical opinions and explain how the ALJ considered the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(a), (b), 416.920c(a), (b); *see Tyrone W. v. Saul*, No. 3:19-CV-01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020). "The ALJ may but is not required to explain how other factors were

9 – OPINION AND ORDER

considered, as appropriate, including relationship with the claimant (length, purpose, and extent of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Linda F. v. Comm'r Soc. Sec. Admin.*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020). However, ALJs are required to explain "how they considered other secondary medical factors [if] they find that two or more medical opinions about the same issue are equally supported and consistent with the record but not identical." *Tyrone*, 2020 WL 6363839, at *6 (citing 20 C.F.R. §§ 404.1520c(b)(2) and 404.1520c(b)(3)).

Furthermore, the court must continue to consider whether the ALJ's decision is supported by substantial evidence. *See Revisions to Rules*, 82 Fed. Reg. at 5852 ("Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision."); *see also* 42 U.S.C. § 405(g).

Here, the ALJ observed that Dr. Spear limited plaintiff to sit for two hours and stand/walk for less than two hours in an 8-hour workday; take 15 minute breaks hourly; elevate legs 2% percent of the workday; be off-task 20% of the workday; and absent from work about four days per month. Tr. 20 (citing 18F/3, 4). The ALJ rejected Dr. Spear's opinion because the record did not support "the severity of the exertional restrictions or the need for leg elevation, off-task behavior, or workplace absences." *Id*. The ALJ also found that "the record is consistent with no further reduction than to light work with postural restrictions, as detailed in the medical analysis above," and "the record did not document evidence consistent with requirements for leg

elevation, off-task behavior, or workplace absences," given "the normal physical examinations and normal stress testing discussed above." *Id*.

Indeed, the record reflects that when Dr. Spear saw plaintiff for chest pains on April 15, 2019, he administered a stress test and "ended up clearing her from a cardiopulmonary standpoint." Tr. 525. During the stress test, plaintiff complained of "no chest discomfort" and exhibited normal heart rate and blood pressure in response to the exercise. Tr. 534. Dr. Spear concluded that plaintiff had an "[u]nremarkable stress test for coronary ischemia," *id.*, and "felt like [plaintiff's] symptoms were not related to any cardiopulmonary pathology." Tr. 525. It was determined that plaintiff's chest pain was "noncardiac in nature" and "more musculoskeletal." *Id*.

Plaintiff argues that in finding plaintiff exhibited "stable and asymptomatic cardiac findings," the ALJ failed to engage in a "thorough discussion of Dr. Spear's treatment records" and ignored portions of the record where Dr. Spear diagnosed plaintiff with palpitations[2] in December 2019, May 2020, and June 2020, Pl. Reply 3 (citing Tr. 567, 571, 575), and where plaintiff complained of chronic fatigue in June 2020. *Id.* (citing Tr. 564).

The ALJ's conclusions constitute a rational interpretation of the record and are supported by substantial evidence. *See Batson*, 359 F.3d at 1193 (holding if evidence exists to support more than one rational interpretation, the court is bound to uphold the ALJ's findings). In June 2019, plaintiff appeared stable and was asymptomatic for palpitations. Tr. 579. In December 2019, plaintiff reported frequent palpitations and was prescribed propafenone for "better rhythm control." Tr. 575. In May 2020, plaintiff appeared "stable" and "asymptomatic for chest pain."

---

[2] In his September 1, 2020 medical source statement, Dr. Spear indicated that plaintiff suffered from palpitations. Tr. 698.

11 – OPINION AND ORDER

Tr. 571. She continued to complain of palpitations, and this time, carvedilol was discontinued and replaced with metoprolol for "better rhythm control." *Id.* However, by June 2020, plaintiff denied palpitations, as well as any chest pain, shortness of breath, dizziness, syncope, orthopnea, PND, fluid retention, and lower extremity edema. Tr. 564. Chart notes also indicate that plaintiff "appears stable and has been asymptomatic for chest pain." Tr. 567. Most importantly, perhaps, plaintiff denied palpitations on September 1, 2020, the date on which Dr. Spear completed his medical source statement. Tr. 692.

As for plaintiff's complaints of chronic fatigue on June 2020, the ALJ properly discounted that medical evidence where it was based on plaintiff's self-reports that were otherwise properly discounted, as discussed above. *See Tommasetti*, 533 F.3d at 1041 (recognizing an ALJ may reject medical evidence if "it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible").

Thus, the ALJ satisfied the supportability and consistency consideration and articulation requirements. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The ALJ's rejection of Dr. Spear's opinion is supported by substantial evidence, and, accordingly, the ALJ did not err.

## ORDER

The Commissioner's decision is AFFIRMED.

DATED September 20, 2022.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge
